Our first case is Martinez v. Hasper in the city of New York. So Mr. Loup, am I pronouncing that right? Yes, Your Honor, thanks. Mr. Loup, you have 10 minutes, but you have reserved 3 for rebuttal, so that gives you 7 minutes out of the gate. The clock does say 9 because the notice said 12. Oh, I'm sorry, I misspoke. You were right. You have 12 minutes, and you've got 9 out of the gate and 3 for rebuttal. Thank you. Thank you, Your Honor. Good morning. May it please the Court. Defendant James Hasper violated clearly established Fourth Amendment law when he shot Robert Ortiz in the chest, nearly killing him. The District Court erred in denying qualified immunity. That was a result of mistakes in both its analysis of the facts and in its discussion of the relevant case law. First, I'd like to discuss the facts. It's elementary that a District Court on summary judgment must resolve all factual disputes in favor of the nonmoving party, which here was the plaintiff. The District Court failed to do that in this case with regard to multiple crucial factual disputes. Well, there's a video, right? Right, Your Honor, yes. So, I mean, certainly we have held and the Supreme Court has held that where video is available, that sometimes it will speed a court towards summary judgment because certain facts are not in dispute. So this video shows Mr. Ortiz being pursued. I mean, where it picks up, it shows him being pursued by police with a damaged front end. It shows him then ram a police car behind him going backwards and then goes forward and rams another car in front of him, right? I would dispute the characterization. The District Court uses the word rammed and the hits, right? He hits two cars. Yes, it did. Substantial force. Let's go with substantial force. I mean, the police car does rock in the video. And he hits the car in front of him with a lot of force, pushing that car into parked cars, right? It wasn't- The question of how much- It was an effort to evade law enforcement and get around those cars. Can we agree on that? Yeah, yeah. He was trying to get out. I think that's fair, Your Honor. And you say in your reply that he was boxed in, but he certainly wasn't boxed in to the extent that he could not cause damage by backing up and hitting cars forward, potentially getting around them, potentially hitting police officers on the street. There's all sorts of things that could happen within that space. Would you agree with that? I would agree that there are things that could have happened, and that means a jury could find that certain things- There was a threat of serious injury to the mother and the two-year-old in the car in front of them that he had hit once into the parked cars. The police officers who were all on foot surrounding the vehicle, or bystanders, anyone, any one person was in threat of serious injury. If any officer could reasonably believe that, it's qualified immunity, right? Yes, but the question is, what are those facts? Those facts, for your consideration, must be the facts that a reasonable jury could find. The problem is that both you and your opponents seem to agree that the shot has occurred, the shot, Hasker shoots at some time around 19-12-12 of the video. Right. But the district court puts a shot after he backs up into the police officer's car, so before he even hits the Davis car. Correct. If the district court is correct, then the calculations with regard to the Davis car and or the danger present there are irrelevant to our determination as to whether it's constitutionally prohibited or not. If the district court's correct, yes. And I guess the troubling thing is the district court seems to think that the video is irreputable, but the district court itself says that the video is ambiguous with regard to when the shot occurs. Well, that's exactly the case, Your Honor. So there is video. The Supreme Court, of course, says that where video irrefutably overrules an argument of- It makes sense. I mean, a video is a perfect record. Right. I've watched this video 100 times, and I find it very difficult to conclude what was some of the things that were going on. Precisely. Just because there's a video doesn't mean that everything depicted in the video is unambiguous or that the inferences you could draw from what happened in the video- We can agree, notwithstanding the district court, but I think you agree that the shot, based upon the pedestrian's ducking, certainly occurred after he had ran with substantial force the car in front of him. We all agree on that, right? Even if the district court got that wrong, we can agree on that, can't we? That was what the parties agreed in the court below, yes, Your Honor. All right. So we can agree he hit the police car with substantial force. He hit her car with substantial force. And there were police officers within field of the vehicle. We can agree on all that, right? Well, again- There's a lot we can't tell, but we can tell all those things. Can we tell how far the Davis vehicle is out of the lane of traffic? Can we tell if there's a vehicle in the oncoming lane of traffic? This is a two-lane highway with cars going both ways and people parallel parked, so there's room for four cars across. Yes. From what I can see, every parking space is taken. Appears so, yes. So it's two places to two lanes. And can we see if there's oncoming traffic after the Davis vehicle struck? Well, you can see certain cars in the other lane. Basically, there's nowhere for Mr. Ortiz to go. You can see that much, or at least a jury could certainly find that there's nowhere else for Mr. Ortiz- We can see there's no officers in front of the vehicle at that moment in time, can't we? That you can absolutely see, yes. Because there's certainly room for him to go backwards, right? There was a little bit of room, but there's no- The amount of room that he initially hit the police car with was now available again to hit it again if he wanted to go backwards. It's possible that he could have done that, but a jury could find, among other things, that two officers, that Officer Hasper perceived that two officers were entering the car on the verge of incapacitating him. And under those circumstances, it's- They were not in that car yet. You would agree on that, right? The car door was open. The video is ambiguous, but we have deposition testimony on that point. I mean, at that point, you're looking at a teeny corner that's blurry, covered- The deposition testimony was the officer was trying to enter the car. Nobody had a hold of your client or anything close to a hold on your client when that shot was fired, right? There's no testimony to that. That's correct. But a jury could find that Officer Hasper perceived that at the moment he decided to shoot Mr. Ortiz, two officers- If Officer Hasper had not shot, in a split second, couldn't your client have put the car in reverse immediately and hit the police car again and moved it forward again? Couldn't he have done all that before anyone grabbed him in that car, or is that not possible? Well, again, that's for the jury to decide whether that was Officer- Well, it's for the jury to decide only if there's some reasonable basis to believe that the jury would reach a decision, other than that there was probable cause to believe that an immediate threat was posed. I think that's the line of questioning from Judge Bianca. Right. There's a set- I mean, he had already hit two cars. So, I mean, your argument is that he needed to hit a couple more and the police officer would have to sort of do the physics to figure out what kind of force and velocity he could muster in that time? Well, there are two responses to that. First of all, the jury could find, again, that after he hit the second car, he was on the verge of being incapacitated. So there was no reason to shoot at that point. The second thing, Your Honor, is that we cited multiple cases decided before this decision, before this case, in which drivers collided with other cars, and even with a police officer's body. And the courts, appeals courts in those cases, denied qualified immunity. In Little, the driver crossed into oncoming traffic and collided with a moving car. In Abraham, the driver backed out, and the allegation was that he rammed a Mustang. In Sigley, the driver backed up and hit an officer's hand. But in each case, the court denied qualified immunity. In addition to- in this case, we have something those cases did not, which, again, was that the officers were coming into the car to disable Mr. Ortiz. And we also have Officer D'Antuono's testimony. He was standing directly next to Officer Hasper. The gun went off in his ear. And he testified in his deposition that he did not believe that any officer was at risk of being hit by that car. Which case- which case of ours, Second Circuit case, would put an officer on notice on these facts that his use of force, deadly force, would be unreasonable? Which case? Well, Cowan goes to the issue of whether an officer is in front of the car. If an officer's not in front of the car and the car's not bearing- Well, Cowan, the police officer, the only person in the vicinity, fired two shots from 44 feet away. The plaintiff was driving slowly or not even moving. And the officer said he fired the second shot because he was told you should always fire two shots. So I don't think that case would hardly put a police officer in this situation on notice that he couldn't use deadly force. Well, Cowan is one of this court's cases. And then there are all the other circuit court cases, which, of course, this court- In our circuit, Cowan would be the only case that you would be relying on to put an officer on notice? For that one component. There are other cases which I know your Honor's familiar with from the Jones v. Trubick case, which is Tracy versus Freshwater. I'm very familiar with that case. Yes. The facts in that case were, according to the plaintiff's testimony, he was face down on the ground, arms out, and had already been tasered. And he said he hadn't moved at all, and they tasered him a second time. And I said, there is no qualified immunity if you taser someone who's not moving on the ground. I don't think that, at least from my view, that doesn't help me in this situation. If I may just take a moment to point out footnote nine in that case, in which your Honor wrote that even if the suspect had been able to perhaps get up and resist further, there were six other officers right there who were in a position presumably- If a police officer was reaching into the car, how long would it have taken him to put that car in reverse again? A split second? But that's a question for the jury. The jury could find that those officers were in a position. We don't- No, but it's a question of qualified immunity. If any reasonable officer presented with that set of facts, if one reasonable officer could conclude, I can't take a chance, that he's going to back up and hit that woman and her child again, get around that car, and speed off and hit other people. I can't take that chance. If one reasonable officer could conclude based upon that video, then he has qualified immunity. But if a jury could find that the officers were going to incapacitate him and that, therefore, it was not reasonable to believe that he was going to be able to back up- where the car could not move, was inoperable, or was boxed in to the extent that it could not move, or if the police officer was grabbing him and about to pull him out of the car and he was shot, where the officer had control of him such that he couldn't move the car. And we know from the video that both of those situations are not possible here. So- I don't- the video does not show that that's not possible. The video is- Someone could look at that video and say a police officer was holding him and pulling him out of the car- I mean, we don't- we don't even know what's happening on the other side of the car from the video. But there's nothing in the depositions that says that they were holding him and pulling him out of the car. There's no testimony that an officer was actually holding him and pulling him out of the car, no. But there is testimony that an officer was on the passenger side trying to get in there to disable him. And Officer Haspert himself told the NYPD in an internal interview, this is at Joint Appendix 194, that he observed one officer reaching through the driver's side window on the other side, attempting to restrain the operator, Mr. Ortiz. So a jury could conclude from that that he saw that another officer was in the position to end this chase without shooting Mr. Ortiz in the chest. And that's the Adams case. In those seconds, based on the video, it would be simple to just put the car in reverse and then injure the police officers who were trying to get into the car. But again, this is exactly an issue that a jury could say, yes, he was going to be able to potentially back it up. Or they could say, no, he saw an officer who was in a position to incapacitate that driver. A jury could infer that. And this court has to grant all inferences in favor of the plaintiff. All right. Well, you've got three minutes for rebuttal. Thank you. We'll now hear from your adversary. That's Mr. LaBarbera. Yes. And you're splitting your time seven and five, is that right? Yes, Your Honor. Okay. So you've got seven minutes, Mr. LaBarbera. Thank you. May it please the Court. The facts of this case are a stark reminder of the Supreme Court's language in Graham v. Conner, that the calculus of reasonableness must make allowance for the fact that officers are often forced to make split-second judgments, intense and rapidly evolving circumstances, about the amount of force that is necessary. Officer Hasper had mere seconds to decide what was reasonable and lawful in the situation he confronted. Just 18 seconds passed between the moment in time that he first observed Ortiz's vehicle and the moment that he discharged his firearm. However, during those 18 seconds, the decedent, Robert Ortiz, managed to operate his vehicle in such a manner that it was not clear to a reasonable police officer in Hasper's position that it was unlawful to use deadly physical force. Plaintiffs and the parties haven't been afforded years in the quiet of a law office to analyze, frame by frame, a Monday morning quarterback, an incident that unfolded in just 18 seconds. Hasper didn't have that luxury. He had moments to perceive the facts and circumstances and decide what was reasonable and lawful. As one circuit court noted, officers are not liable for bad guesses in gray areas. They are liable for transgressing bright lines. Given Ortiz's conduct and the fast-paced nature of the incident, it was far from clear that Hasper was transgressing a bright line. Well, he did transgress one bright line, and that's the police patrol guy, right? Yes, Your Honor. So speaking specifically to that particular patrol guide provision, the New York City Police Department's patrol guide provision with regard to shooting at a vehicle, it includes an additional requirement that the Constitution reasonableness standard does not contemplate. It prohibits an officer from shooting at a moving vehicle unless the motorist is using something other than the vehicle itself as a deadly weapon. Right. So it is totally divorced from the constitutional standard. The objective reasonableness standard- What about the state standard? I'm interested in the battery. Why did the qualified immunity determination suddenly absolve the officer of state battery liability? So the district court- Because the state standard doesn't have a qualified immunity, doesn't have that two-prong test. It's just a question of objective reasonableness, isn't it? Well, Judge Russell, I believe the- Isn't it just a question of objective reasonableness? Well, yes. I think if the court- So we measure it, and you've got a standard that says the deadly force can only be used when being used against a police officer or other person present by means other than the moving vehicle. So the moving vehicle's out, right? I'm not sure I follow, Your Honor. So- The fact that the officers may have been in danger because of a moving vehicle is not relative with regard to his ability to discharge the firearm under the NYPD regulation. So under the NYPD regulation, an officer is not permitted to shoot at a moving vehicle unless that motorist is using something in addition to the vehicle as a means of posing a threat. So- So the danger to the officers from the moving vehicle is out as a justification for shooting? No, Your Honor. I would- Well, first of all, like I had said before, it's a different standard, okay? And I think- So how is- How then- Let me go back. Sure. How did the court decide to dismiss the state claim? Sure. So the district court determined that because it found that the state court analog for qualified immunity is similar in respect to the federal qualified immunity standard, with one exception, it imposes one other requirement, a subjective requirement of bad faith, which the court determined there was nothing in the record that suggested that Hasker acted in bad faith and certainly plaintiff never alleged. What the court did was it imposed the obligation on Ortiz, but the ability to have that immunity is an affirmative defense. It should have been Hasker's responsibility to plead that, shouldn't it? Yes, Your Honor, but- And so the absence of anything about Hasker's subjective position weighs against Hasker as opposed to Ortiz, doesn't it? Well- The district court got it wrong.  Well, if Hasker had the obligation to establish that subjectively, he had a fear. And so therefore, notwithstanding the regulation, he was authorized to shoot under state law. He should have pled that, right? Yes, Your Honor, but I believe- And the court said there's nothing that proved whether he was or was not afraid. No, Your Honor, I mean- What did he testify to in his deposition? What did he testify to about what the fear was? So, to quote him directly, the statement he made was that in the moment after Mr. Ortiz's vehicle struck Carlene Davis's vehicle, the motorist in front of him, his quote was, I wanted the vehicle to stop. I was in fear for my safety. I was in fear for the safety of others, the other police officers, the other civilians in that area. I didn't think he would stop unless- So based upon that, it's his burden. But if no reasonable jury could find he was acting in bad faith based upon that testimony. And the circumstances, then we could find qualified immunity under state law, right? Yes, Your Honor. In front of the car? The video shows he's clearly not in front of the vehicle, right? Your Honor, he's close to the vehicle, not directly in front. Correct. Yes, Your Honor. I understand he's close to the vehicle. I'm not trying to trick you. I'm just trying to figure out the facts here that are irrefutable from the video. Sure. Was he in front of the vehicle? He was not directly in the vehicle. Were there any officers directly in front of the vehicle? At one point, yes. Let me finish. I apologize, Your Honor. It's okay. You haven't got a lot of time. At the time that he shot- There were officers not in front of the vehicle directly at the time he was shot. They had people- There were no people in front of the vehicle at the time that he shot or as he- There were no people in front, yes. There's a car that has people in front of it. Correct. There is a motorist, a Colleen Davis, and a two-year-old child in a vehicle in front of him that he had just struck and pushed into a car. And Hasbro knew there was a child in the car? He knew that there was a civilian motorist in the car. The record is not clear whether he knew there was a two-year-old child in the car. I know everybody keeps talking about the child, and I understand that, but that's not the question. The question was that- There's no evidence in the record that he knew there was a child in the car. But, you know, I think when we talk about this point, we do have the video. And the video does depict enough key facts that are not in dispute, that he drove into oncoming traffic to continue to flee when he was stuck, that he struck a police vehicle, that he didn't stop there, that he struck another vehicle. Those facts are not in dispute, and they are unambiguously depicted on the video. And the question that we are here to answer is whether it would be clear to a reasonable police officer in that situation that it was unlawful in a split second to employ deadly force. And Hasbro didn't have the luxury of sitting back and analyzing a video. He was on the scene. The incident unfolded quickly, and the law permits that officers are given an allowance. Should the analysis include the fact that he was off-duty and was sort of overtaking a situation where there was uniformed police officers on duty, or that doesn't matter? I don't think it matters, Your Honor. There are cases that say that the nature of a police officer's job is special, that they're duty-bound to enforce the law even when they're off-duty. The cases that deal with scope of employment say there's no bright-line test on on-duty or off-duty. He observed and did what we expect New York City police officers to do. He observed a situation that he believed, as a police officer, warranted his intervention, and he acted reasonably in that situation. Can I ask you a slightly different question? This is not a qualified immunity question. In your view, could any reasonable fact finder reviewing that video conclude other than that Ortiz posed an immediate threat to the life or safety of others? Your Honor, I would say no reasonable jury or court could say that it was clear to him, given how quickly the events unfolded, that it was clear that Ortiz did not pose a significant threat of serious harm. I mean, you're drifting back into qualified immunity, I think. I'm asking a different question, not a qualified immunity. Is it your position that no reasonable fact finder could conclude other than that this guy posed an immediate threat to life and safety? Yes, we have certainly argued that in the first step of the analysis, there's no constitutional violation. That it is clear that it was objectively reasonable for him to believe that Ortiz posed a significant threat of serious harm. But again, that's different. I'm trying to understand. I mean, are you arguing for summary judgment on the basis? I mean, I know you're really arguing to affirm on the basis of qualified immunity, but I'm saying a higher test, a harder test, but one you might still be able to reach, is that nobody watching this video could conclude other than that this was, in fact, a guy who was posing an immediate threat. Yes, that's what we argued in our brief as well. We argued both, that there's no constitutional violation, and nonetheless, the belief was reasonable as well in titling him to qualified immunity. Okay. Well, we'll stop there unless anybody has more questions. Thank you. You went a little over, but so did Mr. Luke, and so now we'll hear from Mr. DeSilvio. Good morning. May it please the court, Lorenzo DeSilvio on behalf of the city. So the individual parties have focused their attention on qualified immunity, but I'd like to focus on some of the questions that Judge Wesley and Judge Sullivan was asking about the higher standard for objective reasonableness, because the city has a different pitch, which is that the only claim against the city is a theory of vicarious liability predicated on the alleged battery. And as Judge Wesley pointed out, if the objective reasonableness standard is satisfied, there is no underlying violation, and so our vicarious liability can't attach. There's really no dispute as to that. But here's where the city would invite the court to go, which is that looking at the district court's analysis, sure, it used the words qualified immunity, but functionally it was saying that this was a decision on the merits, a resolution of the battery claim on the merits. And we point out- Well, let's say we disagree, even if you can interpret it that way. Let's say we think there could be facts if a jury could determine this was objectively unreasonable, but we believe there's qualified immunity both under federal law and state law. Based upon our recent precedent, the city still could be liable under a respondea superior liability standard, which the district court obviously did not consider. You agree with all of that, right? Yes, that's correct. That's our reading of the bill. So why would we even decide then? Why wouldn't we send it back to the district court, directing that the district court decline supplemental jurisdiction? Because at this point, it would be just a pure matter of New York state law, because for If we think there's qualified immunity, should we weigh in on this at all? That is an option that's available to the court, and I would like to point out that- When do we do something like that? When the federal claim is gone, why would we weigh in on whether a police officer operated objectively reasonably under New York state law, under a battery claim? When have we ever done that when a federal claim has been dismissed on qualified immunity? You're right, Your Honor. I worked on a case called Harge. I think it's number 212293. That case was six and a half years in federal court. It had a Title VII claim and a city human rights law claim. The court got rid of the Title VII claim and said remand with instructions to dismiss. So that certainly is an option for the court. It's just not correct that this court doesn't or can't do that. So declining supplemental jurisdiction is one option, but I just want to make one final pitch about resolution of the objective reasonableness question, which is the through line between all the individual claims. It's that it's not unusual for the same set of undisputed facts, particularly based on video evidence- this is borne out by the Garcia litigation- to resolve a claim, or perhaps the case in its entirety, either on immunity grounds or on the merits. What would be unusual is for Officer Hasker to be out of the case, but the city is back, either before the district court or in state court, making the exact same arguments about objective reasonableness and talking about its conduct. Under those circumstances, the city would like to avoid that and is thus inviting the court to consider whether, if the objective reasonableness is satisfied, the case can be disposed of in its entirety. But we agree with counsel for Officer Hasker that both the qualified immunity standard, which doesn't matter for the city, but even the higher objective reasonableness standard is satisfied here. Thank you, Your Honor. All right, Mr. Loop. You've got three minutes for rebuttal. On the question of Officer Hasker's subjective belief that he was in danger, a reasonable jury wouldn't have to find the facts that he- wouldn't have to agree with what his testimony was, basically. I mean, he testified that a car- the car was coming at him, and he was afraid for his own life, and that's why he shot. The video disproves that. The officer who was right next to him, D'Antuono, was not afraid of himself or any other officers being hit. So a jury doesn't have to accept Officer Hasker's subjective belief, his testimony that he subjectively believed he was in danger. To the extent that the court is inclined to get rid of the federal claims, although, of course, it shouldn't, we think it shouldn't, we would say that rather than weighing in on the- it should be decided by a lower court in the first instance, whether it's the federal court or the state court. So you would say send it back to the district court to decide whether to exercise supplemental jurisdiction in the first place, and then if so, then if it's going to exercise supplemental jurisdiction, then I guess it would, I don't know. Frankly, Your Honor, at this point the case is trial ready. Given that everything's already happened in the district court, and we're right there, that was in our briefs we laid out, let's just have the trial in the district court. At this point if you go to trial- When have we done that? We've granted qualified immunity, and there's only a state law battery claim left with no qualified immunity issue in it at all, even under state law. Assuming we think there's qualified immunity also under state law, when have we ever endorsed a district court hearing a pure state law claim, especially if it's a complicated one like this one is? Yeah, I don't have those cases off the top of my head, Your Honor, and again, in fact, if that's the court's inclination, to send it back to state court to decide those issues in the first instance- We could not, there's authority for us under these circumstances, not leaving it up to the district court to make that determination, but directing the district court to decline, right? Would you be okay with that? Directing it to decline supplemental jurisdiction? Yeah. If that's the way to keep the case alive, yes, we'd be okay with that. Well, I mean, so what are you arguing, I guess, is really the question. Are you asking us to send it back and let the district court decide in the first instance, or are you asking us to decide now? And what are you asking us to decide if we decide now? Are you asking us to let you go forward with supplemental jurisdiction, or are you conceding that that's a loser for you? Putting me on the spot right now, I would say send it back to the district court with instruction to send it to state court. Great. Okay. Fair enough. I have 20 seconds left, and I just want to say that on the second-guessing issue, the split-second, this issue about questioning an officer under split, making a split-second decision, we're not asking this court or a jury to second-guess the officer any more than the NYPD supervisors did when they disciplined this officer for violating- But they're disciplining him because of a patrol guide rule that it seems to me is designed for a different purpose. It's designed to make sure that in a densely populated city, people aren't shooting their guns casually. Which- It doesn't seem to me that Mr. Ortiz gets the benefit of that rule. That's designed to protect other people. Certainly, and that's one of the reasons, though, that Officer Hasper was categorically prohibited from firing his gun in this situation. That doesn't affect the Constitution. Whatever New York City decides on that, and I'm not sure every city has the same rule, because you can imagine a situation where someone's intentionally driving up on the sidewalk and killing people momentarily stops, right? And is about to do it again, but the police officer decides they're not going to let that person continue to run over people. I'm going to use deadly force. And even if the New York City patrol guide says you can't do that, the Constitution rule can be that's not unreasonable force, right? Clearly, the Constitution, yes, is not coextensive with the NYPD- Just because he violated that rule does not mean that he has somehow, it doesn't affect the constitutional standard in any way. But it goes at least to whether he had this kind of internal debate from second to second, and he knew he wasn't supposed to fire his gun. That's where he's starting from. There are also cases that we cited. I mean, Cowan, I think, contains this. Adams certainly talks about this. The Constitution, it's relevant to the constitutional question. On the battery side, it might certainly be relevant to the objective reasonableness of his employment of the weapon, right? Right. Regardless of what the department may have a number of reasons why he had that rule. That too, Your Honor. Yes, absolutely. Okay. Thank you very much. All right. Well, thank you all. We will reserve decision, but will argue.